UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UTILITY WORKERS UNION OF AMERICA LOCAL 223, AFL-CIO,**<br>Plaintiff,<br>vs.<br>**DTE ELECTRIC COMPANY,**<br>Defendant. | **2:25-CV-12305-TGB-DRG**<br>HON. TERRENCE G. BERG<br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND PETITION (ECF NO. 5),**<br>**AND DISMISSING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS MOOT (ECF NO. 12)** |

In this case, a power plant workers' union, dissatisfied with an arbitrator's decision, asks the Court to overturn that award while the utility company is asking to dismiss the union's suit and for the arbitrator's award to be confirmed.

Plaintiff Local 223, Utility Workers Union of America, AFL-CIO ("Union") have filed a Complaint and Petition to Vacate Arbitration Award against Defendant DTE Electric Company ("DTE") pursuant to Section 301(a) of the Labor Management Relations Act ("LMRA"), 20 U.S.C. § 185(c) and Section 10(a)(4) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(4). In its Complaint and Petition, the Union asks this Court to enter an Order vacating Arbitrator Elaine Frost's April 28,

2025 Opinion and Award and instructing the parties to "resubmit" their dispute to a "new neutral arbitrator" under the arbitration procedure set forth in their collective bargaining agreement.

Now before the Court is Defendant DTE's Motion to Dismiss the Union's Complaint and Petition. ECF No. 5. The motion has been fully briefed. ECF Nos. 9, 11. DTE also filed a Cross Petition to Confirm Arbitration Award, ECF No. 6, to which the Union has responded. ECF No. 10. Upon review of the parties' filings, the Court concludes oral argument will not aid in the resolution of this matter. Accordingly, the Court will resolve the present motion on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons stated below, DTE's motion to dismiss and its petition to confirm the award will be **GRANTED**.

## I. BACKGROUND

### A. Background

DTE, a public utility providing gas and electric services in Southeast Michigan, operates Power/Fossil Generation ("Power Gen") plants as well as a nuclear plant known as Fermi II ("Fermi"). ECF No. 1-3, PageID.234. DTE and the Union are parties to a collective bargaining agreement ("CBA") under which the Union represents maintenance employees at both the Power Gen and Fermi plants. *Id.* The maintenance employees at the two plants were maintained were on a single seniority list. *Id.* PageId.235.

In 1994, the parties agreed in a Memorandum of Understanding ("MOU") to settle a dispute involving layoffs that all the maintenance employees in both plants, "who are on a single seniority list … will be considered as one classification" for purposes of layoffs. *Id.* (citing 1994 MOU).

In the 1995 CBA, the parties agreed to split the maintenance employees bargaining unit in two separate bargaining units—the "Power Gen" bargaining unit and the "Nuclear Gen" bargaining unit. *Id.* After the split, the parties agreed that the maintenance employees in both units would remain on a combined seniority list for all maintenance employees known as the "Maintenance Occupation Group." *Id.* PageID.234–35.

In 2018, DTE's then-Director of Employment Relations, Renee Moran-Bates, engaged in discussions with then-Union President, Michael Smith, because "there 'was a lot of movement going back and forth' causing issues 'dealing with two different bargaining units[.]" *Id.* PageID.237. Moran-Bates testified at the arbitration hearing that she and Smith looked at the 1994 MOU and at Section 7.11 of the current CBA and that they agreed there would be two maintenance seniority lists for bidding on jobs at the plant and that the single combined maintenance seniority list would be only considered for layoffs and reductions. *Id.* Moran-Bates explained that the limitation of the combined seniority list to protection under Section 7.11 was based on her and Smith's jointly

understood interpretation of the 1994 MOU and Section 7.11 of the current CBA. *Id.*

Moran-Bates then sent a letter to Smith by email on May 2, 2018, memorializing their agreement and stating, in relevant part:

> **RE: 1994 Memorandum of Understanding**
> **Seniority List - Power Generation/Maintenance**
> **Bargaining Unit**
>
> Mike:
>
> This is a follow up to our discussion regarding the above referenced matter. As you know, the parties are subject to a Memorandum of Understanding ("MOU"), dated December May 31, 1994. The MOU, which was meant to address seniority list for purposes of layoffs and reductions, states in relevant part that:
>
>> "The Parties, having discussed the seniority list issue, now agree that for purpose of Article VII, Section 11 — Layoffs and Reductions, the Maintenance Journeyman, Master Maintenance Journeyman and Nuclear Maintenance Journeyman, who are on a single seniority list per the March 19, 1993 Proposal approved by Maintenance Bargaining Unit, will be considered as one classification."
>
> A recent review has shown that despite the agreed upon language outlining the clear intent and purpose of the MOU, the combined seniority list is being used outside of the MOU provisions.
>
> This letter is to put the Union on notice that effective as of the date of this letter, the Company will only utilize the combined

> seniority list for the clearly agreed upon purpose only and that the seniority list for the two groups will not be combined for any other purposes.

*Id.* PageID.238.

According to Moran-Bates, there was no need for her or Smith to sign a written MOU for their agreement because they simply agreeing on how to interpret existing CBA language, not creating new contract language. *Id.* She testified before the Arbitrator that Smith did not want to sign the agreement they reached "for political reasons," but that he never objected to the letter or stated that the letter was incorrect in describing the agreement they had reached. *Id.* When Bill Dyer, then Chairperson Nuclear Generation Division, objected in conversations with Moran-Bates after the May 2nd letter was issued, Moran-Bates told him to take it up with then-President Smith. *Id.* Neither Smith nor Dyer testified at the arbitration hearing, although Dyer was present at the hearing. *Id.* PageID.244.

A little over five months later, on October 12th, 2018, a Maintenance Retention MOU was executed which restricted Fermi maintenance employees from transferring out of Fermi from 60 days after that date and until June 5, 2021, in "an effort to meet critical business needs … and … provide … an incentive to maintain employee complement for critical work." *Id.* PageID.238–39. In exchange, these employees were given a base rate increase of $1.50 per hour. *Id.*

### B. The Arbitration Proceedings

After the Maintenance Retention MOU ended on June 5, 2021, several grievances were filed by Fermi maintenance workers asserting that they were "bypassed when less senior [P]ower [G]en maintenance employees were award[ed] Power/Fossil Gen plant openings over more senior Fermi maintenance employees." *Id.* PageID.240 & fn.15. The grievances were submitted for arbitration before a neutral arbitrator selected by the parties, Elaine Frost, who heard testimony on October 17, 2024 and January 24, 2025.

#### 1. Union's arbitration position

The Union asserted before Arbitrator Frost that DTE violated the CBA when it "unilaterally" ended the use of the combined seniority list of Fermi and Power Generation maintenance employees for the purpose of bidding on open positions at the two plants. ECF No. 1-3, PageID.241–42. The Union contends that the Maintenance Occupational Group is the "present seniority list" under Section 7.4 of the CBA. *Id.* The Union disagrees that the Moran-Bates May 2, 2018 letter constitutes a "mutual agreement" between Moran-Bates and Smith under Section 7.4 of the CBA and asserts that the letter had no force and effect because the parties did not memorialize it in a written and signed memorandum of understanding. *Id.*

**2. DTE's arbitration position**

DTE argued at arbitration that, regardless of the prior seniority list, in 2018, the parties, by and through Moran-Bates and Smith, reached a "mutual agreement" to amend the seniority lists for the affected classifications and memorialized it in the letter from Moran-Bates to Smith on May 2, 2018. *Id.* PageID.243–44. DTE contends that notwithstanding any prior practices to date, the "mutual agreement" they reached satisfied CBA Article 7, Section 4 because that section permits the parties to modify the seniority lists by "mutual agreement," with no specific requirement for the agreement's format. *Id.* DTE asserted that treating the Fermi and Power Gen bargaining units as having two separate seniority lists was not "groundbreaking," but "was simply agreeing to treat these two separate bargaining units the exact same way other classifications are treated." *Id.* DTE argued that the Union could have called Smith or Dyer to challenge Moran-Bates' testimony at the hearing about the "mutual agreement" but failed to do so. DTE asserts that "the Union is not permitted, years later, to undo that agreement through the grievance process." *Id.*

**3. Arbitrator Frost's decision**

Arbitrator Frost held two full days of a hearing during which the parties each received "ample opportunity to examine and cross-examine witnesses, to submit other evidence, and to argue their respective positions." ECF No. 1-3, PageID.233. In addition, she had a certified copy

of the transcript, and considered post-hearing briefs submitted by the parties. *Id.*

On April 28, 2025, Arbitrator Frost issued her Opinion and Award, concluding that "Moran-Bates and Smith clearly agreed there would be two maintenance seniority lists for purposes of bidding, and the combined maintenance seniority list would no longer be used for bidding," and that "[t]he effect of that letter agreement was not rebutted by the Union." *Id.* PageID.244. Arbitrator Frost further found that the Union did not rebut DTE's "contention that the Moran-Bates/Smith letter constituted a 'mutual agreement' to change seniority rights of maintenance employees under the requirements of Section 7.4 (Seniority Lists)[.]" *Id.* She noted that the Union never called Dyer to testify to dispute the fact of the "mutual agreement," despite Moran-Bates' testimony that he was fully aware of it and Dyer's presence at the hearing. *Id.* Arbitrator Frost concluded that she is "persuaded that the May 2nd letter agreement resolved that power gen maintenance bidders have preference over competing Fermi maintenance bidders for maintenance jobs in power gen plants, regardless of the relative seniority of Fermi employees," and denied that portion of the grievances. *Id.* PageID.245–26.

Arbitrator Frost, however, granted the portion of two grievances from employees who claimed that after they transferred to maintenance positions in Power Gen from Fermi, their seniority was adjusted to remove the seniority they had earned while working at Fermi. *Id.*

PageID.245–46. She found that this unilateral Company action violated the parties' past practice and the CBA. *Id.*

**C. Procedural History**

On July 28, 2025, the Union filed in this Court its Complaint and Petition to Vacate Arbitration Award pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 20 U.S.C. § 185. ECF No. 1. The Union alleges that Arbitrator Frost exceeded her authority under the CBA in rendering her decision and concluding that the May 2, 2018 letter was a "mutual agreement" when it was not signed by the Union, and thus dispensed "her own brand of industrial justice." *Id.* The Union asks the Court to vacate the April 28, 2025 Arbitration Award, with an instruction to resubmit the parties' dispute to a new neutral arbitrator under the CBA's arbitration procedure. *Id.*

DTE was served with a copy of the Complaint on August 14, 2025, and on September 4, 2025, filed the instant Motion to Dismiss. ECF No. 5. At that same time, DTE also filed a Petition/Cross-Petition to Confirm Arbitration Award. ECF No. 6. DTE argues in its motion to dismiss that first, the Union's claim are untimely, because DTE was not served with a copy of Complaint/Petition within three months after the award was filed or delivered, and second, even if the claim is timely, the Union failed to show that there was a "procedural aberration" in the arbitration process. ECF No. 5.

DTE's motion to dismiss has been fully briefed, ECF Nos. 9, 11, and the Union has responded in opposition to DTE's cross-petition to confirm the arbitration award. ECF No. 10.

On February 17, 2026, the Union filed a Motion for Summary Judgment, asserting the same arguments as in its Complaint and Petition and in its opposition to DTE's motion to dismiss. ECF No. 12. DTE filed a Motion to Stay any further proceedings in this case, including motion practice on the Union's motion for summary judgment, until the Court rules on the Union's Complaint and Petition and DTE's motion to dismiss. ECF No. 14. The Court granted that motion, staying further proceedings in this case until its decision on the Union's Complaint and Petition and DTE's Motion to Dismiss. ECF No. 15.

## II. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(l)

Federal Rule of Civil Procedure 12(b)(1) allows dismissal for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(l). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) may challenge a federal court's subject matter jurisdiction through either a facial or factual attack. *Crugher v. Prelesnik*, 761 F.3d 610, 613 (6th Cir. 2014) (citing *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005)). A facial attack, as here, tests the pleading's sufficiency, not the veracity of its allegations. *Stout v. United States*, 721 F. App'x 462, 465 (6th Cir. 2018). Facial attacks require allegations to be taken as true and

construed in the light most favorable to the non-moving party. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A factual attack, on the other hand, challenges the factual existence of subject matter jurisdiction, and "the court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014). When subject-matter jurisdiction is challenged under Rule 12(b)(l), the plaintiff has the burden of proving jurisdiction. *See id.*

**B. Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must construe the complaint in the light most favorable to the

plaintiff and accepts well-pleaded factual allegations as true. *Id.* The standard is liberal but requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (internal quotations omitted). A plaintiff falls short if it pleads facts that do not "permit the court to infer more than the mere possibility of misconduct." *Id.* (citation modified).

### C. Judicial Review of an Arbitration Award

A court's power to vacate an arbitration award is limited in scope. *Electronic Data Sys. Corp. v. Donelson*, 473 F.3d 684, 688 (6th Cir. 2007). When reviewing an arbitration award, "'the review is very narrow; [it is] one of the narrowest standards of judicial review in all of American jurisprudence.'" *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005) (*quoting Lattimer-Stevens Co. v. United Steelworkers*, 913 F.2d 1166, 1169 (6th Cir. 1990)). The Court must enforce an arbitration award if it "draws its essence from the collective bargaining agreement." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (quoting *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). Simply put, if the award is based on the arbitrator's interpretation of the CBA, it is legitimate. *See id.* at 36–37. "If an arbitrator is even arguably acting within the scope of his authority in interpreting the CBA, his decision will be enforced." *Monee Nursery & Landscaping Co. v. Int'l Union of Operating Eng'rs*, 348 F.3d 671, 675

(7th Cir. 2003). "This applies even if the 'court is convinced [the arbitrator] committed [a] serious error' of fact or law in reaching his decision." *Id.* (alteration in original) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam)).

## III. DISCUSSION

### A. Whether the FAA Applies to This Action Seeking to Vacate a Labor Arbitration Award

DTE first contends that most of the claims in the Union's Complaint track factors the federal courts consider when determining whether to vacate an arbitration award under the Federal Arbitration Act ("FAA"), but argues the FAA does not apply to actions, such as this one, seeking to vacate labor arbitration awards. ECF No. 5, PageID.269–70. DTE asserts that Section 1 of the FAA provides, in pertinent part, "nothing herein contained shall apply to *contracts of employment of* seamen, railroad employees, or *any other class of workers engaged in* foreign or *interstate commerce*." *Id.* (quoting 9 U.S.C. § 1 (emphases added)). DTE states that the courts have held that collective bargaining agreements are "contracts of employment" within Section 1 of the FAA's statutory exclusion, and thus this Court does not have jurisdiction over the Union's Section 10 FAA claims. *See Misco*, 484 U.S. at 40 n.9; *Occidental Chem. Corp. v. Int'l Chem. Workers Union*, 853 F.2d 1310, 1315 (6th Cir. 1988); *Bacashihua v. U.S. Postal Serv.*, 859 F.2d 402, 404–05 (6th Cir. 1988).

The Union "acknowledges" that there is "some ambiguity" whether the FAA creates a coverage exception for labor arbitrations, and asserts that it pled the FAA violation "to err on the side of caution," and also pled a violation of Section 301 of the LMRA, which "provides a legal basis for vacatur[.]". ECF No. 9, PageID.290.

As the Sixth Circuit recognized in *Samaan v. General Dynamics Land Systems, Inc.*:

> Generally, there are two flavors of arbitration cases: labor arbitrations pursuant to collective-bargaining agreements and commercial arbitrations pursuant to other agreements. Review of the former class of cases is governed by federal labor law, such as the Railway Labor Act and the Labor Management Relations Act, *see Bhd. of Locomotive Eng'rs & Trainmen v. United Transp. Union*, 700 F.3d 891, 899–900 (6th Cir. 2012); *Titan Tire Corp. of Bryan v. United Steelworkers of Am., Local 890L*, 656 F.3d 368, 371–72 (6th Cir. 2011), whereas the FAA frames the review of the latter, *see Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581–82, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008).
>
> Although labor arbitrations and commercial arbitrations share certain legal concepts, these areas of law are not interchangeable. This distinction reflects the understanding that, "[r]ather than signaling the 'breakdown in the working relationship of the parties,' as it does in a commercial setting, labor arbitration 'is at the very heart of the system of industrial self-government.'" *Bhd. of Locomotive Eng'rs & Trainmen*, 700 F.3d at 900 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Mindful of this distinction, we will apply the FAA to our review of the instant case because it falls into the commercial-arbitration category.

835 F.3d 593, 599–600 (6th Cir. 2016).

This Court, "[m]indful of this distinction," will not apply the FAA directly to its review of the instant case because this case falls into the labor-arbitration category. *See id.*; *Misco*, 484 U.S. at 40 n.9; *Occidental Chem.*, 853 F.2d at 1315–16 (recognizing that the FAA "does contain an exclusion with respect to labor contracts").

### B. Whether the Union's Complaint Should Be Dismissed as Untimely

#### 1. Applicable statute of limitations

DTE argues that the Union's Complaint and Petition should be dismissed as untimely because the Union failed to file *and serve* the Complaint on DTE within three months of the Arbitrator's decision. The Union argues in response that its Complaint is timely because it was filed within 90 days after receiving notice of the Arbitrator's decision.

Section 301 of the LMRA does not contain a limitations period. *See* 29 U.S.C. § 185. Therefore, federal courts apply the state statute of limitations period most analogous to the cause of action at issue. *See International Union, United Auto., Aerospace & Agric. Implement Workers of Am. (UAW), AFL-CIO v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–05 (1966). However, "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking,

[courts] have not hesitated to turn away from state law." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 171–72 (1983).

In *Occidental Chemical*, decided in 1988, the Sixth Circuit considered the most appropriate statute of limitations to apply in a case from Michigan, brought pursuant to Section 301 of the LMRA to vacate an arbitration award. Although recognizing that the then-existing Michigan Arbitration Act ("MAA"), MCL § 600.5001, contained a limitations period, the Sixth Circuit agreed with the district court that it should not borrow the MAA's limitations period applicable to an action to vacate an award because the MAA, by its express terms, did not apply to labor disputes. *Occidental Chem.*, 853 F.2d at 1315 (citing *Badon v. Gen. Motors Corp.*, 679 F.2d 93, 98–99 (6th Cir. 1982) (holding that the MAA statute of limitations is not appropriate for application in a Section 301 LMRA claim because it excludes labor contracts)). The court recognized the apparent "paradox" of borrowing a limitations period from the FAA—a statute, like the MAA, that otherwise excludes labor contracts—but noted that the FAA deals specifically with arbitration and the Supreme Court has approved of courts looking to the FAA for guidance in labor arbitration cases. *See id.* at 1315–16 (citing *Misco*, 484 U.S. at 40 n.9 (collecting cases) and *Postal Workers v. U.S. Postal Serv.*, 823 F.2d 466, 476 (11th Cir. 1987)). The Sixth Circuit recognized that the Supreme Court has held that LMRA Section 301 empowers federal courts to fashion rules of common law to govern "[s]uits for violation of contracts

between an employer and a labor organization" under the federal labor laws. *Id.* (quoting *Textile Workers v. Lincoln Mills*, 353 U.S. 448 (1957)).[1]

DTE contends that since *Occidental Chemical*, courts in the Sixth Circuit and Eastern District of Michigan have consistently held that the applicable three-month statute of limitations period for vacating or modifying arbitration awards under Section 301 LMRA is the one provided for in Section 12 of the FAA. *See, e.g., Bacashihua*, 859 F.2d at 406; *Sheet Metal Emps. Indus. Promotion Fund v. Absolut Balancing Co.*, 884 F. Supp. 2d 617, 621 (E.D. Mich. 2012) (Zatkoff, J.); *International Bhd. of Elec. Workers, Local 58, AFL-CIO v. Metro Elec. Eng'g Techs., Inc.*, 880 F. Supp. 2d 770, 774–76 (E.D. Mich. 2012) (Zatkoff, J.); *Laborers' Pension Tr. Fund Detroit and Vicinity v. Lange*, 825 F. Supp. 171, 175 (E.D. Mich. 1993) (Gadola, J.).

---

[1] The Court takes notice that, as the dissent in *Occidental Chemical* stated, the majority's application of the FAA statute of limitations to a Section 301 LMRA motion to vacate an arbitration award was inconsistent "with the holdings of the First, Third, Fourth, Fifth, Ninth and Tenth Circuits, which have refused to apply the [FAA] in the labor law context." *Occidental Chem.*, 853 F.2d at 1318–19 (Krupansky, J., dissenting); *see also Kennedy v. Uniroyal Pension Plan*, Nos. 90-1705, 90-2048, 90-1983 and 90-2110, 1991 WL 134613, at * 7 n.1 (6th Cir. July 23, 1991) (per curiam) ("Six Circuits 'have refused to apply the USAA in the labor law context. The legislative history of the USAA makes it clear that the USAA was intended to govern only commercial arbitration and that labor matters were expressly excluded. Accordingly, almost without exception, the other circuits have adhered to the express language of the USAA and have refrained from 'simply invent[ing] by judicial decree, a statute of limitations where Congress has failed to do so.'").

Section 12 of the FAA provides, "Notice of a motion to vacate, modify, or correct an award *must be served* upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12 (emphasis added). DTE asserts that Arbitrator Frost delivered her arbitration award to the parties on April 28, 2025. Thus, to be timely under the authority cited above, the Union needed to *serve* its Complaint and Petition to vacate on DTE, by July 28, 2025. ECF No. 5, PageID.274. DTE asserts that while the Union filed the Complaint and Petition on July 28, within three months of the arbitration award, it did not serve DTE until August 14, 2025. ECF No. 3. DTE submits that the Court should therefore dismiss the Union's Complaint and Petition as untimely.

The Union argues that since the Sixth Circuit's decision in *Occidental Chemical*, the Michigan legislature repealed and replaced its former arbitration law with the Michigan Uniform Arbitration Act ("MUAA"), M.C.L. § 691.1681 *et seq.* ECF No. 9, PageID.307. The Union contends that, unlike its predecessor statute, the MUAA does *not* exclude labor arbitration awards, asserting that the statute notes that "an employer and a labor organization may waive the right to representation by a lawyer in a labor arbitration." M.C.L. § 691.1684(d). The Union thus argues that the logic of *Occidental Chemical*—declining to rely on the state statute of limitations in the MAA because it excludes labor arbitrations—no longer applies and this Court should apply the MUAA

limitations period to the Union's Complaint instead of the FAA's. ECF No. 9, PageID.308. Under the MUAA, a motion to vacate an arbitration award "must be filed within 90 days after the moving party receives notice of the award." M.C.L. § 691.1703. Because the 90-day limitations period here would run through July 28, 2025, the Union asserts its Complaint is timely, and personal service of the Complaint on DTE on August 14, 2025 would constitute timely service "in a manner provided by [Michigan] court rule" in an MUAA action. ECF No. 9, PageID.308 (citing M.C.R. 1.108(1)).

The Sixth Circuit's unpublished decision in *UAW International v. TRW Automotive U.S. LLC*, 850 F. App'x 929 (6th Cir. 2021) is in line with the Union's argument that the MUAA provides the appropriate statute of limitations for a Section 301 LMRA claim to vacate an arbitration award. In that case, the Sixth Circuit reversed the district court's decision to award attorney's fees and costs to plaintiffs in a collective bargaining dispute subjected to arbitration involving contractual and statutory claims, finding that the decision was within the labor arbitrator's exclusive discretion. *Id.* at 935–40. The court went on to note that even if it treated the parties' cross motions as a challenge to the arbitrator's award under Section 301 of the LMRA, the district court still would have lacked authority to hear the dispute because the challenge would have been untimely. *Id.* at 940. The court observed that "[i]n a LMRA § 301 challenge, timeliness 'is to be determined, as a matter

of federal law, by reference to the appropriate state statute of limitations,'" and "[w]ith respect to Michigan law, Michigan's Uniform Arbitration Act, which went into effect in 2013, is closely analogous to a § 301 action involving a dispute over a labor CBA." *Id.* The court stated, "[b]ased on this statute, challenges to an arbitration award brought pursuant to § 301 of the LMRA in Michigan are therefore subject to a 90-day limitations period." *Id.* (citing MCL § 691.1703(2)). The court stated that, because plaintiffs' motion was filed approximately six months after the arbitration award was issued, it was untimely. *Id.* at 940–41.

DTE argues that the Court should not apply the unpublished *UAW International* decision and continue to apply the limitation period in Section 12 of the FAA to the Union's Section 301 LMRA claim, despite the repeal of the MAA, because the FAA is the "more appropriate statute from which to borrow a statute of limitations." ECF No. 11, PageID.366; *see also* ECF No. 5, PageID.274 n.3. DTE asserts, incorrectly, that the MUAA excludes labor arbitrations from its jurisdiction, citing the prior, repealed statute in support of this assertion. *See id.* (citing M.C.L. § 600.5001(3)). The Michigan Supreme Court has recognized that "[u]nlike Michigan's prior statutory arbitration provision, see M.C.L. 600.5001(3), as amended by 1961 PA 236, the [M]UAA does not carve out arbitrations governed by collective bargaining agreements or those involving public or private sector labor organizations." *Michigan*

*AFSCME Council 25 v. Cnty. of Wayne*, 5 N.W.3d, 333, 336 (Mich. 2024) (Welch, J., concurring).

DTE further contends that the *UAW International* court's reference to the MUAA was obiter dictum, as the case did not involve a petition to vacate an arbitration decision, and that because the decision is unpublished, it is not binding on this Court. ECF No. 5, PageID.274 n.3. While *UAW International* is not binding, the Court can consider it as persuasive authority. *See, e.g., Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011); *United States v. Webber*, 208 F.3d 545, 552 (6th Cir. 2000). The Union has failed to cite, and the Court has been unable to find, any case since *UAW International* holding the MUAA's statute of limitations applies to a motion to vacate an arbitration award under Section 301 of the LMRA. In addition, after *UAW International* was decided, the Sixth Circuit again applied the statute of limitations set forth in Section 12 of the FAA in a suit under the LMRA to vacate an arbitration award, but without discussing *UAW International*'s application of the statute of limitations in the MUAA. *See Greenhouse Holdings, LLC v. Int'l Union of Painters & Allied Trades Dist. Council 91*, 43 F.4th 628, 631 (6th Cir. 2022) (applying the FAA's three-month limitations period and confirming the district court's ruling that the motion to vacate a labor arbitration award was timely because it was filed within three months of the award).

At the same time, other Sixth Circuit decisions have applied "appropriate state statute of limitations" from other states, instead of the

FAA, where those states' laws addressed the vacation of arbitration awards, as Michigan now does in the MUAA. *See, e.g.*, *Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers Local No. 24*, 357 F.3d 546, 552 (6th Cir. 2004) ("The appropriate statute of limitations utilized in an Ohio case seeking to challenge a party moving to vacate, modify, or correct an arbitration award is the Ohio Revised Code ("O.R.C.") § 2711.13."); *Aloisi v. Lockheed Martin Energy Sys., Inc.*, 321 F.3d 551, 557–58 (6th Cir. 2003) (applying 90-day limitations period in Tennessee Uniform Arbitration Act to motion to vacate arbitration award). Following the approach of these published circuit authorities, it is reasonable that the Court could similarly look to the now "appropriate" Michigan state statute of limitations pertaining to the vacation of arbitration awards in this case, instead of the FAA.

**2. The Union's Complaint is timely filed**

If the Court applies the statute of limitations set forth in the MUAA, as stated in *UAW International*, the Union's Complaint is timely, as it was filed within 90 days after the Union received the Arbitration award.

However, if the statute of limitations set forth in the FAA applies, whether the Union's complaint is timely is less clear. DTE correctly asserts that the FAA provides that "[n]otice of a motion to vacate, modify, or correct an award must be *served* upon the adverse party or his attorney within three months after the award is filed or delivered." *See* 9 U.S.C.

§ 12 (emphasis added). It is undisputed that the Union filed its Complaint within three months, but it did not serve the Complaint on DTE within three months of the Arbitration Award. However, as the Union points out, the Sixth Circuit in *Occidental Chemical* explained that it would "look to [the FAA] for *guidance* in labor arbitration cases, … and borrow its three-month period *while not applying it directly*." *Occidental Chem.*, 853 F.2d at 1316 (emphases added). The Union asserts that the Sixth Circuit thus applied the three-month limitations period to *file* an action, but not the service requirement. ECF No. 9, PageID.310–12 (citing cases applying the limitations period to when a claim is "brought" or "filed," not when the complaint is served).[2]

Tellingly, DTE has failed to cite to any case in the Sixth Circuit, this District, or elsewhere, dismissing a motion to vacate an award under the LMRA (as opposed to directly under the FAA) for failure to timely *serve* the complaint, as opposed to failing to timely *file* the complaint, and the Court has found none. Thus, applying the three-month limitations period in the FAA for filing or bringing this Complaint and Petition to

---

[2] *See also, e.g., International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Loc. Union No. 783 v. Dean Foods Co.*, 968 F.2d 1215 (6th Cir. 1992) (looking at when plaintiff "*filed* its complaint in district court") (emphasis added); *Absolut Balancing Co.*, 884 F. Supp. 2d at 621 (stating that *Occidental Chemical* required the timely *filing* of an action to vacate an arbitration award); *Local 67 v. Emerson*, No. 06-CV-10083, 2006 WL 2521422, at *2 (E.D. Mich. Aug. 30, 2006) (Steeh, J.) ("[A]ctions to vacate, attacking the validity of an award, must be *brought* within three months of the award.") (emphasis added).

vacate the arbitration award under LMRA § 301, the Court finds that the Union's Complaint and Petition was timely filed.

**C. Failure to State a Claim**

DTE next argues that, even if the Union's Complaint was timely filed, its Section 301 LMRA claim fails to state a claim upon which relief can be granted because it is without merit. ECF No. 5, PageID.275–80. DTE asserts that the Court's review of Arbitrator Frost's decision is limited to determining whether there was a "procedural aberration" in the arbitration process, and the Union cannot make that showing here. *Id.*

The Union argues in response that it has met this standard because the Arbitration Award is silent on or inconsistent with the CBA's signed writing provision and Arbitrator Frost failed to properly interpret and apply the CBA. ECF No. 9, PageID.312–22.

As stated previously, a court's review of an arbitrator's decision is "very narrow." *Nationwide Mut. Ins. Co.*, 429 F.3d at 643; *see also Major League Baseball*, 532 U.S. at 509 (explaining that the federal courts' review of labor-arbitration decisions is not just "limited," it is "very limited"). It is firmly established that "so far as the arbitrator's decision concerns construction of the contract, *the courts have no business overruling him because their interpretation of the contract is different from his.*" *United Steelworkers,* 363 U.S. at 596 (emphasis added); *see also Misco,* 484 U.S. at 38 (stating that so long as the arbitrator "is even

arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision"). "The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Misco*, 484 U.S. at 36. When "an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." *Major League Baseball*, 532 U.S. at 509 (quoting *Misco,* 484 U.S. at 39).

The Sixth Circuit has stated that a court's review of an arbitration award is limited to three questions of "procedural aberration":

> (1) whether the arbitrator acted "outside his authority" by resolving a dispute not committed to arbitration;
>
> (2) whether the arbitrator committed fraud, had a conflict of interest, or otherwise acted dishonestly in issuing the award; and
>
> (3) whether the arbitrator was "arguably construing or applying the contract" in resolving any legal or factual disputes

*Michigan Fam. Res., Inc. v. Serv. Emps. Int'l Union Loc. 517M*, 475 F.3d 746, 753 (6th Cir. 2007). With regard to the last question—whether the arbitrator was "arguably construing or applying the contract"—doubts on the issue should be resolved in favor of enforcement of the arbitrator's decision. *Id.* "So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted

even though the arbitrator made 'serious,' 'improvident' or 'silly' errors in resolving the merits of the dispute." *Id.*

As to the first two questions, DTE asserts that the Union does not allege that Arbitrator Frost acted outside her authority by resolving a dispute not committed to arbitration or that she committed fraud, had a conflict of interest, or otherwise acted dishonestly in issuing her arbitration award. ECF No. 5, PageID.278. The Union does not contest this. *See* ECF No. 9. PageID.315.

DTE asserts that the Union only addresses the third question—whether the arbitrator was "'arguably construing or applying the contract' in resolving any legal or factual disputes"—when the Union alleged in its Complaint that Arbitrator Frost "failed to construe the parties' CBA as required under its terms." ECF No. 5, PageID.278 (citing Compl. ¶ 37, ECF No. 1). DTE argues that Arbitrator Frost, interpreting the language of the parties' CBA, concluded that DTE and the Union reached "mutual agreement" as provided for pursuant to Article 7, Section 4 of the CBA to establish a combined seniority list to be used for layoffs and reductions in force but not for bidding or any other purpose. *Id.* (citing ECF No. 1-3, PageID.244). DTE asserts that the Union's disagreement with Arbitrator Frost's interpretation of the parties' CBA is insufficient to demonstrate that there was a "procedural aberration" in her decision. *Id.* PageID.279.

The Union argues in its Response that Arbitrator Frost failed to address a "signed writings provision" of the parties' CBA in reaching her decision that the Union and DTE reached a "mutual agreement" to adjust seniority for a group of employees, as provided in Article 7, Section 4 of the CBA. ECF No. 9, PageID.315–19. This provision, which appears in a side-letter to the CBA and which applies to "[m]odification to contract and creation of an MOU" provides that:

> Any writings that modify the Collective Bargaining Agreement and/or create new Memorandums of Understanding's between the parties must be executed by the Director of Human Relations and the UWUA's Local 223's President.

ECF No. 1-2, PageID.120. The Union further states that the CBA expressly provides that "No arbitrator shall have the power to change any of the provisions of this agreement." *Id.* PageID.27. The Union argues that the Arbitration Award construed the "letter agreement" as a "letter constitute[ing] a 'mutual agreement' to change seniority rights of maintenance employees under the requirements of Section 7.4," and thus as a "writing[] that modif[ies] the Collective Bargaining Agreement." ECF No. 9, PageID.316. The Union asserts that because this writing modified the parties' CBA but was not signed by both parties, the Arbitration Award is in contravention of the parties' CBA and must be vacated.

The Sixth Circuit has cautioned that "judicial consideration of the merits of a dispute is the rare exception, not the rule." *Michigan Fam. Res.*, 475 F.3d at 753. As was the case in *Michigan Family Resources*, the Award here "has all the hallmarks of interpretation[, in that it] quotes from and analyzes the pertinent provisions of the contract, and at no point does [it] say anything to indicate that the [arbitrator] was doing anything other than trying to reach a good-faith interpretation of the contract." *Id.* at 754. Arbitrator Frost concluded, after a full hearing with witness testimony, exhibits, a transcript, and post-hearing briefs, that the parties reached a "mutual agreement" pursuant to Section 7.4 of the parties' CBA (which provides that the "established practices … shall continue … unless changed by mutual agreement") to establish a combined seniority list to be used for layoffs and reductions but not for bidding or any other purpose. ECF No. 1-3, PageID.244–45.

The Union argues that a side letter to the CBA required that "[a]ny writings that modify the Collective Bargaining Agreement and/or create new Memorandums of Understanding's between the parties must be executed by the Director of Human Relations and the UWUA's Local 223's President." ECF No. 9, PageID.318–19. The Union contends that Arbitrator Frost's Award does not address this provision or adequately explain why it does not apply in this case. *Id.* This case, according to the Union, is like others in which awards were vacated because of "poor fundamentals of contract law." *Id.* PageID.319–20 (citing *Dematic Corp.*

*v. Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. (UAW)*, 635 F. Supp. 2d 662 (W.D. Mich. 2009) and *International Bhd. of Elec. Workers, Local 429 v. Toshiba Am., Inc.*, 879 F.2d 208 (6th Cir. 1989)).

However, in summarizing the parties' respective positions, Arbitrator Frost noted: "the Union did not identify any language in the CBA requiring that 'mutual agreement' referenced in Article 7, Section 4 has to be set forth in a MOU," ECF No. 1-3, PageID.243, and she stated that Moran-Bates testified at the hearing that there was no need "to sign a MOU for their agreement because [they] were *interpreting* language, not creating new contract language." *Id.* PageID.238. Arbitrator Frost then concluded, based on the May 2nd letter and the testimony at the hearing that the parties negotiated and "mutually agreed" that there would be two maintenance seniority lists for purposes of bidding and that the combined seniority list would only be used for purposes of layoffs or reductions under Section 7.11. *Id.* PageID.244–45. Arbitrator Frost further stated that Moran-Bates' testimony about "the effect of that letter agreement was not rebutted by the Union," even though the Union's Treasurer, Dyer, was present during the arbitration hearing. *Id.*

This case is distinguishable from *Dematic Corp.* and *Toshiba America* cited by the Union. In *Dematic Corp.*, the arbitrator ordered the employer to pay laid off employees fringe benefits for a period of six months following the layoff, based on the past practice of the employer

and the expectations of the employees, despite unambiguous language in the applicable CBA requiring that the employer only pay the fringe benefits for a period of three months following the layoff. *Dematic Corp.*, 635 F. Supp. 2d at 677–78. The court found that "the arbitrator was not even arguably construing or applying the CBA" when she "effectively disregarded" the CBA's provisions and relied instead on "past practices," "rather than consulting [the CBA provisions'] language and attempting in good faith to apply them as written." *Id.* at 678–79.

Similarly, in *Toshiba America*, several employees were discharged for participating in a strike in violation of a no-strike provision contained in the applicable CBA. 879 F.2d at 209. Although the CBA contained a provision expressly allowing the employer to discharge employees who participated in strikes, the arbitrator ordered the employer to reinstate the striking employees because he found that the employer had orally agreed with the union not to discharge employees who participated in the strike, and that the oral agreement overrode the express terms of the CBA which provided "[a]ny disciplinary action, including discharge taken as a result of a violation of [the no-strike clause] ... shall not be altered or amended in the grievance and arbitration procedures, the sole issue for presentation to the arbitrator and decision by him being whether or not the employees engaged in conduct in violation of [the no-strike clause]." *Id.* at 210. The district court and the Sixth Circuit refused to enforce the arbitrator's decision, holding that it was in direct conflict with the CBA:

The court explained that "[w]hile we realize that great deference must be granted to the arbitrator's interpretation of the contract, the arbitrator's action in this case amounts to a total disregard of the plain language of the contract." *Id.* at 210–11.

On this record, by contrast, the Court concludes that Arbitrator Frost clearly *was* "arguably construing or applying the contract" in rendering the Arbitration Award. *See Zeon Chem., L.P. v. United Food & Com. Workers, Loc. 72D*, 949 F.3d 980, 983 (6th Cir. 2020) (observing that where the arbitrator set out the relevant facts and provisions of the CBA and explained how each party interpreted the agreement, then analyzed the provisions of the CBA and applied his interpretation to the parties' dispute, his analysis bore all the "hallmarks of interpretation"). Here, the Arbitrator had authority to interpret the CBA; her decision neither contradicts nor totally disregards the CBA's unambiguous terms. The real thrust of the Union's main argument is that the interpretation of the Arbitrator was wrong. But even if that is so, the "sole question for [the Court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether [s]he got its meaning right or wrong." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) ("[A]n arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits.") (citation omitted). Unlike in *Dematic Corp.* and *Toshiba America*, the Arbitrator's Award is neither in direct contradiction nor "so untethered from the agreement that it

casts doubt on whether [s]he was engaged in interpretation, as opposed to the implementation of [her] 'own brand of industrial justice.'" *Titan Tire Corp. of Bryan v. United Steelworkers of Am., Loc. 890L*, 656 F.3d 368, 374 (6th Cir. 2011) (quoting *Michigan Fam. Res.*, 475 F.3d at 754).

Accordingly, the Court finds that the Arbitrator acted within her authority, and that the award was founded on a reasonable interpretation of the CBA. Binding precedent's requirement that the Court afford considerable deference to labor arbitration awards, as noted above, precludes this Court from upsetting the Arbitration Award in this case. Thus, the Court will **GRANT** DTE's Motion to Dismiss Plaintiff's Complaint and Petition and **DISMISS** the Union's Complaint and Petition. For these same reasons, the Court will **GRANT** DTE's Cross Petition to Confirm Arbitration Award.

However the Court will **DENY** DTE's request for attorney fees. Under the long-established American Rule, attorney fees "are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." *Summit Valley Indus. Inc. v. Local 112, United Bhd.. of Carpenters & Joiners of Am.,* 456 U.S. 717, 721 (1982). The Sixth Circuit has recognized that although Section 301 of the LMRA does not authorize an award of attorney fees as an element of damages, fees may be awarded if a party pursues a lawsuit in bad faith or without justification. *See Knollwood Cemetery Ass'n v. United Steelworkers of Am.,* 789 F.2d 367, 369 (6th Cir.1986). Those grounds are not present

here. The Union had some authority for seeking judicial review of the Arbitrator's decision and did not act improperly in pursuing such review. And there is no reason to believe the Union acted in anything other than good faith.

## IV. CONCLUSION

For all the reasons stated above, the Court **LIFTS THE STAY** in this case and **ORDERS** that Defendant DTE's Motion to Dismiss Plaintiff Union's Complaint and Petition to Vacate Arbitration Award, ECF No. 5, is **GRANTED** and Union's Complaint and Petition to Vacate Arbitration Award, ECF No. 1, is **DENIED**.

**IT IS FURTHER ORDERED** that DTE's Cross Petition to Confirm Arbitration Award, ECF No. 6, is **GRANTED** and may be enforced according to its terms.

Finally, **IT IS FURTHER ORDERED** that the Union's Motion for Summary Judgment, ECF No. 12, is **DISMISSED AS MOOT.**

This is a final order that closes the case.

**IT IS SO ORDERED.**

Dated: August 24, 2026

/s/Terrence G. Berg
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE